UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD ALLEN LIMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:24-cv-00598-JPH-CSW |
| ) | |
| CARTER Doctor, ) | |
| TEAH Nurse Practitioner, ) | |
| RUNYON HSA, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING MOTION TO STRIKE SURREPLY AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO EXHAUSTION DEFENSE**

Plaintiff Richard Lima filed this action contending that his constitutional rights were violated when he received inadequate care for an infected abdominal wound while he was housed at New Castle Correctional Facility ("New Castle"). Defendant Dr. Jason Carter moves for partial summary judgment arguing that Mr. Lima failed to exhaust his available administrative remedies as to any claim against him as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit.[1] For the reasons explained below, the motion, dkt. [33], is **DENIED.** In addition, the Court **notifies** Dr. Carter of its intent to grant summary judgment for Mr. Lima on the exhaustion issue.

---

[1] Eighth Amendment claims are proceeding against Nurses Runyon and Teah, who have withdrawn the exhaustion defense. Dkt. 46.

1

# I.
# Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, a way to resolve a case short of a trial. See Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute over any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the materials cited by the parties, see Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that could be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. In this case, Defendants have not met that burden.

## II.
## Factual Background

### A. Plaintiff's Underlying Medical Issues and Claims Proceeding in this Action

#### 1. The medical issues

At all relevant times, Mr. Lima was an Indiana Department of Correction ("IDOC") inmate housed at New Castle.

On July 22, 2023, Mr. Lima underwent an exploratory laparotomy at St. Vincent Anderson Hospital after he ingested sporks. Dkt. 34-3 at 16-18. The surgeon found perforations of the bowel and duodenum. *Id.* Mr. Lima returned to New Castle on August 10, 2023, and was admitted to the infirmary where he remained until August 28. *Id.* at 18, 20. Dr. Carter was made aware of Mr. Lima's return and ordered that Mr. Lima be provided antibiotics and pain medication. *Id.* at 19.

On September 19, Mr. Lima submitted a request for health care in which he stated that he was going to give up and let the infection kill him because he

was in so much pain. *Id.* at 22. That day, Dr. Carter issued an order for "stat wound culture[.]" *Id.* at 5.

Nursing staff at New Castle cleaned Mr. Lima's wounds and did his dressing care until September 20, when Mr. Lima refused a dressing change. *Id.* at 1-2. The next day, nursing staff received a verbal order from Dr. Carter for Mr. Lima to do his own dressing changes, and Mr. Lima was given supplies to do so. *Id.* at 3.

On September 27, Mr. Lima saw the nurse to do the lab work per Dr. Carter's order. *Id.* at 3–4. Dr. Carter was not involved in Mr. Lima's care after September. Dkt. 34-2 at 2, ¶ 5. The lab results were received on October 1 and showed that Mr. Lima had a staph infection. Dkt. 34-3 at 15. A non-defendant nurse ordered antibiotics to treat the infection, and by October 20, the wound had improved. Dkt. 34-3 at 8, 11.

On November 9, Mr. Lima was seen by defendant Nurse Teah, and Mr. Lima reported that he had been changing his dressing as ordered but had run out of supplies. *Id.* at 13. Nurse Teah continued his dressing order, and he verbalized an understanding of the plan. *Id.* at 14.

Dr. Carter's last day working at New Castle was December 7, 2023. Dkt. 34-2 at 2, ¶ 6.

4

### 2. The Amended Complaint and Screening Order

After the Court screened and dismissed Mr. Lima's original complaint, dkt. 9, Mr. Lima filed an amended complaint on July 3, 2024, dkt. 10.

The amended complaint states that on December 17, 2023, Mr. Lima had serious abdominal pain and an infection from an open wound. *Id.* at 2. He had notified medical staff and they "reluctantly failed to tend to [his] serious medical inquires." *Id.* at 2. He alleges that the defendants named in his amended complaint deliberately refused to treat him and ignored the risk of infection. *Id.* They also delayed him being sent to a hospital for additional treatment. *Id.* As to Dr. Carter, Mr. Lima alleged that he was being sued because "he had [Mr. Lima] changing [his own] dressing that lead [*sic*] "him" to catching [a] staph infection" and caused him to vomit blood. *Id.* at 4.

The Court screened the amended complaint and allowed Eighth Amendment deliberate indifference claims against Dr. Carter and two nurses to proceed. Dkt. 19 at 5.

### 3. Grievance Process

The IDOC has a standardized Offender Grievance Process that was in place during the time Mr. Lima alleges his rights were violated. IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process ("IDOC Grievance Process") is the IDOC's policy governing the grievance procedure and provides how an inmate must exhaust his administrative remedies using that procedure. Dkt. 34-1 at 1-2, 4-18. The purpose of the IDOC Grievance Process "is to provide a process where offenders . . . may resolve concerns and

5

complaints relating to their condition of confinement" and to provide additional communication channels for inmates to express areas of concern for efficient and fair resolution. *Id.* at 4. Inmates may submit grievances over issues including policies, procedures, and rules of the IDOC or relevant facility, including concerns related to medical care. *Id.* at 6.

During the relevant period, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. Dkt. 34-1 at 1-2, 6. An inmate must submit his grievance no later than ten business days from the date of the incident giving rise to the issue. *Id.* at 1-2, 12.

### 4. Mr. Lima's Grievances

At New Castle, Mr. Lima submitted three grievances about his medical care: Grievance No. 24-171155, dated December 23, 2023, with an incident date of December 17, 2023 (dkt. 34-1 at 19-27); Grievance No. 24-183940, dated June 11, 2024, with an incident date of June 10, 2024 (*id.* at 28-39); and Grievance No. 24-193485, dated October 10, 2024, with the same incident date (*id.* at 40-44).

Grievance No. 24-171155 is dispositive of the issue presented here. The first-level grievance reads:

> I have recently filled out a Health Care request pertaining to a serious medical need in which the Facility and its medical staff/personall [sic] has reluctantly failed to follow up on and see to my medical inquiries As policy and administrative procedure 01-02-101 states for Health care service under policy statement paragraph

6

> 3-4, All confined offenders shall have access to health services necessary to treat serious medical conditions. The general categories of services that shall be available are consultation, diagnosis, evaluation, treatment and referral, emergency and routine medical care shall be provided. But care provided will generally not include care that is not necessary either because the care is ineffective or the condition is not serious. Seriousness of a medical condition may be judged by considering the conditions to cause death or disability, to cause pain, or to cause significant problems with activities of daily living. Part VII Access to Health Care: Paragraph 3-paragraph 3- All staff persons who have received the proper training in First-aid and cardiopulmonary resuscitation (CPR) shall have an affirmative duty to respond and provide any necessary services for which they have been trained. These include services provided to offenders, staff, and visitors at the facility. I have physical evidence to substantiate my claims and medical staff witness. I am seeking that medical staff attend to and answer medical request, as well as follow up on the reported medical needs

Dkt. 34-1 at 27.

The grievance was responded to on February 16, 2024, with the response, "According to AHSA Winningham, Patient was seen 2/1 by the provider and again in NSC on 2/12. Patients' concerns are being addressed. Patient has been approved for a CT scan which has been scheduled. Grievance addressed." *Id.* at 24.

Mr. Lima appealed the grievance on March 18, 2024, noting in relevant part,

> I do not have a medical license to be taking care of my own changing without the right equipment. I feel like I have not been getting the right medical help I need due to the lack of emergency attention I am seeking resulting in medical malpractice. I have knots on the left side of my stomach that hurts very badly and the pain level is excruciating causing lack of sleep. . . A foul smell is coming from my wound showing signs of an infection and needs serious attention before spreading further.

*Id.* at 22 (minor spelling mistakes cleaned up).

7

A staff member responded that the facility could offer no relief as to Mr. Lima's medical issues, only Centurion could, but Mr. Lima was scheduled for a CT scan at an outside facility. *Id.*

Mr. Lima checked the box noting that he disagreed with the facility response on March 22, 2024. *Id.* at 21. The Grievance Manager rejected the grievance on the basis that Mr. Lima was being seen for his issues, had been scheduled for a CT scan, and could express concerns about his treatment by providing documentation to medical staff. *Id.* at 20.

### B. Procedural history

Dr. Carter moves for summary judgment on the claims against him, arguing that Mr. Lima failed to exhaust his available administrative remedies under the PLRA before filing this lawsuit. Dkt. 33. Mr. Lima filed his response to Dr. Carter's motion for summary judgment on July 7, 2025. Dkt. 38. Dr. Carter filed his reply brief on July 17. Dkt. 40. That reply did not cite new evidence or object to the admissibility of any evidence in Mr. Lima's brief. *See id.* On August 7, Mr. Lima filed a surreply which included new evidence in the form of a declaration. Dkt. 41. Defendants subsequently filed a motion to strike, arguing that the surreply is improper under Local Rule 56-1(d).

According to Local Rule 56-1(d),

> A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. The surreply

8

must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections.

Because the surreply violates Local Rule 56-1(d), the Court **grants** Dr. Carter's motion to strike the surreply, dkt. [43]. The **clerk is directed** to strike the surreply at Docket No. [41].

### III. Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

Here, it is undisputed that Mr. Lima completed the three steps of the grievance process as it related to Grievance No. 24-171155. Dr. Carter argues, however, that "[e]ven if" this grievance "can be construed to apply" to him, it was untimely as to any issue related to him because it was filed on December 23, 2023, with an incident date of December 17, 2023, yet he no longer worked for

9

New Castle as of December 7, 2023, and had not provided care to Mr. Lima since September 2023. *See* dkt. 35 at 10-13.

As an initial matter, Mr. Lima's grievance sufficiently raised his concerns about Dr. Carter's decisions. The IDOC Grievance Process does not require that inmates name the individuals responsible for their issues. Rather, the purpose of the grievance process is to alert the prison to the nature of the problem. *See Jones v. Bock*, 549 U.S. 199, 219 (2007) ("[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.")); *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) ("[A]n inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought.") (cleaned up). The undisputed evidence reflects that the subject matter of Grievance No. 24-171155 concerned the medical issue at the heart of Mr. Lima's amended complaint, and that is sufficient. *See Schillinger*, 954 F.3d at 995.

Second, Dr. Carter's argument that the grievance was untimely does not show a failure to exhaust because IDOC grievance staff did not reject Mr. Lima's grievance as untimely. The grievance was resolved on the merits. When a prison resolves a grievance on the merits, the plaintiff's obligation as to exhaustion has been satisfied. *See Maddox v. Love*, 655 F.3d 709, 721-22 (7th Cir. 2011) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served it function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense."); *see also Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005)

10

("We have held that a prison grievance rejected solely on the basis of untimeliness will not fulfill the exhaustion requirement. We have also explained, however, that if prison administrators choose to consider the merits of an untimely grievance, then the claim has been exhausted."). This is particularly true here, when Mr. Lima's medical issue related to his post-surgery wound was ongoing. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing.").

Because it is undisputed that Mr. Lima completed the grievance process as to Grievance No. 24-171155 and that it related to the medical care at issue in this case, the Court finds that Mr. Lima is entitled to summary judgment on the exhaustion defense.

### IV. Conclusion

Dr. Carter's motion to strike surreply, dkt. [43], is **granted**. **The clerk is directed** to strike the surreply at docket 41.

Dr. Carter's partial motion for summary judgment, dkt. [33], is **denied**. Further, under Rule 56(f)(1), the Court gives Dr. Carter notice of its intent to grant summary judgment in Mr. Lima's favor on the issue of exhaustion. Dr. Carter has **through April 6, 2026,** to show cause why summary judgment should not be granted. Alternatively, he may withdraw his affirmative defense by this date.

**SO ORDERED.**

Date: 3/10/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

11

Distribution:

RICHARD ALLEN LIMA
234256
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel